IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA W.,[1]                                    3:19-cv-01178-BR

         Plaintiff,                            OPINION AND ORDER

v.

Commissioner, Social Security
Administration,

         Defendant.


**H. PETER EVANS**
Evans & Evans, PC
520 S.W. Sixth Ave
Suite 1050
Portland, OR 97204
(503) 200-2723

         Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

───────────────────

         [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**DIANA SWISHER ANDSAGER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3708

       Attorneys for Defendant

**BROWN, Senior Judge.**

       Plaintiff Dana W. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## ADMINISTRATIVE HISTORY

       Plaintiff filed an application for SSI on April 22, 2016, and alleged a disability onset date of April 22, 2016. Tr. 149.[2] Her application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 24, 2018.

---

     [2] Citations to the official transcript of record filed by the Commissioner on December 17, 2019, are referred to as "Tr."

2 - OPINION AND ORDER

Tr. 30-62.  Plaintiff and a vocational expert (VE) testified at the hearing, and Plaintiff was represented by an attorney.

On September 27, 2018, the ALJ issued an opinion in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 10-29.  On May 28, 2109, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on June 7, 1975, and was 41 years old at the time of the hearing.  Tr. 149.  Plaintiff has a ninth-grade education.  Tr. 37.  The ALJ found Plaintiff has past relevant work experience as a fast-food worker.  Tr. 23.

Plaintiff alleges disability due to gout, blood clots in her left leg, a "blood disease," "autiphospholipid [*sic*] antibody syndrome," and "eye cancer choroidal melanoma."  Tr. 65.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 51, 17-22.


## STANDARDS

The initial burden of proof rests on the claimant to

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9ᵗʰ Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9ᵗʰ Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9ᵗʰ Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9ᵗʰ Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9ᵗʰ Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving

ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 416.920(b).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commis-

sioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the

Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her April 22, 2016, alleged onset date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of

> amelanotic choroidal lesion of the left eye; malignant neoplasm of the left eye, status post radiation and surgical intervention; hepatitis; fatty liver; alcohol abuse; antiphospholipid

> antibody syndrome; history of gout; history of
> liver disease; history of deep venous thrombosis;
> and history of pulmonary embolism.

Tr. 15.  The ALJ found Plaintiff's cellulitis and "status post hysterectomy" are nonsevere.  Tr. 15-16.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:

> She can perform work that does not require
> climbing of ladders, ropes, or scaffolds.  She has
> limited near and far acuity in the left eye, which
> means that she is reduced to monocular vision.
> She can perform work that requires no more than
> occasional depth perception.  She can perform
> tasks that requires no exposure to unprotected
> heights, dangerous moving machinery, or driving.

Tr. 16.

At Step Four the ALJ found Plaintiff is unable to perform her past relevant work.  Tr. 23.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy.  Tr. 24. Accordingly, the ALJ found Plaintiff is not disabled.


**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially rejected the opinion of treating physician Stanford Taylor, M.D.; (2) partially rejected the opinions of reviewing physicians Peter Bernardo, M.D., and Neal Berner, M.D.; and (3) found at Step Five

8 - OPINION AND ORDER

that Plaintiff could perform other jobs that exist in the
national economy.

## I.    The ALJ erred when he partially rejected the opinion of Dr. Taylor, treating physician.

Plaintiff asserts the ALJ erred when he partially rejected
the opinion of Dr. Taylor, treating physician.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957
(9th Cir. 2002).  When the medical opinion of an examining
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at
957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir.
1996).

On August 8, 2018, Dr. Taylor provided a Vision Impairment
Medical Source Statement in which he noted Plaintiff has
choroidal melanoma in her left eye and her prognosis is unknown.
Plaintiff's "visual field is very constricted in [her] left eye";
she has "poor vision in [her] left eye, no depth perception[;]
[and she has] . . . trouble with accommodation in the right
eye."  Tr. 941.  Dr. Taylor noted Plaintiff could never
perform work that involves "near acuity," depth perception,

or "accommodation."[3]  Dr. Taylor stated Plaintiff has difficulty
walking down stairs and is not "capable of avoiding ordinary
hazards in the workplace, such as boxes on the floor, doors ajar,
[and] approaching people and vehicles."  Tr. 942.  Dr. Taylor
explained Plaintiff

> has poor depth perception which makes it hard to
> climb stairs.  [She has] very limited vision in
> the left eye which makes it hard to avoid ordinary
> hazards [and] . . . poor accommodation which makes
> it hard to work with small objects.

Tr. 942.

The ALJ gave Dr. Taylor's opinion "partial weight."  Tr. 23.
Although the ALJ stated Dr. Taylor's opinion was "consistent with
[Plaintiff's] medical history of undergoing surgeries, receiving
radiation treatment, and seeing specialists for her left eye,"
the ALJ asserted Dr. Taylor failed "to take into account
[Plaintiff's] ability to perform work activities [using] her
right eye, which is still in good condition."  Tr. 23.  The ALJ
found Plaintiff's "ability to ambulate well and completely [*sic*]
her activities of daily living independently" indicates
Plaintiff's "depth perception is not as limited as reflected in
[Dr. Taylor's] assessment."  Tr. 23.

Dr. Taylor, however, specifically noted in his assessment of

---

[3] Accommodation is the "[a]djustment of [the] lens of [the]
eye to bring an object into sharp focus" and "is required when
doing near point work at varying distances from the eye."
Selected Characteristics of Occupations, *Revised Dictionary of
Occupational Titles* (DOT), Appendix C.

Plaintiff's condition that she also had trouble with "accommodation in [her] right eye."  Dr. Taylor, therefore, considered the condition of Plaintiff's right eye when he evaluated her ability to perform "work activities."

In addition, the references in the record on which the ALJ relies to support his conclusion that Plaintiff ambulates well occurred in Spring 2016 before Plaintiff underwent numerous eye surgeries, including a surgery in March 2018 to address retinal detachment.  Moreover, none of those references arose from examinations that were conducted for the purpose of assessing Plaintiff's visual limitations.  Tr. 236, 238, 240, 245.  Social Security Regulations provide the Commissioner will not consider normal test results from visual-field screening tests to be consistent with other evidence in the record when "the clinical findings indicate that your visual disorder has progressed to the point that it is likely to cause visual field loss, or you have a history of an operative procedure for retinal detachment."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 2.00(A)(6)(f). As noted, the record reflects Plaintiff had an operation for retinal detachment, and she has visual-field loss.

Finally, the ALJ relies on an April 2016 note regarding Plaintiff's visit to the emergency room (ER) for "lower extremity pain and swelling" to support his assertion that Plaintiff can perform activities of daily living without assistance.  The ER

physician, Emily Weber, M.D., noted Plaintiff did not report any decline in "ADL function," mobility, or ambulation "within past 7 days." Tr. 303. Dr. Weber, however, was not focused on Plaintiff's vision problems, and there is not any indication in the record that Dr. Weber is an eye doctor. In addition, a note that Plaintiff was not experiencing any decrease in "ADL functioning," mobility, or ambulation in the previous seven days does not provide any insight into the daily activities that Plaintiff was able to perform at that time nor her ability to ambulate at that time.

On this record the Court concludes the ALJ erred when he gave only partial weight to Dr. Taylor's opinion because he did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. The ALJ erred when he partially rejected the opinions of Drs. Bernardo and Berner, reviewing physicians.

Plaintiff alleges the ALJ erred when he partially rejected the opinions of Drs. Bernardo and Berner, reviewing physicians.

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the

nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

On August 12, 2016, Dr. Bernardo reviewed Plaintiff's medical record and concluded Plaintiff "should not perform job tasks that require good depth perception or significant fine visual tasks," but Plaintiff "is able to avoid ordinary hazards in the workplace." Tr. 69. On October 4, 2016, Dr. Berner reviewed Plaintiff's medical record and reached the same conclusion.

The ALJ found the opinions of Drs. Bernardo and Berner were "consistent with the overall medical evidence of record, including the claimant's medical history of undergoing surgeries, receiving radiation treatment, and seeing specialists for her left eye." Tr. 22. Nevertheless, the ALJ gave their opinions "little weight" on the grounds that "their opinions are nonspecific and use undefined vocational terms, which are not helpful in assessing the claimant's functioning given her left eye condition." *Id.* Numerous ALJs, however, have used the term "fine visual" tasks, and district courts in the Ninth Circuit, including this district, have not found they erred in doing so. *See, e.g., Vega v. Berryhill*, No. CV 18- 00928-JEM, 2019 WL

1099781, at *4 (C.D. Cal. Mar. 8, 2019)(ALJ did not err at Step Three when he included a limitation in Plaintiff's RFC of "no jobs requiring fine visual detail."); *Barraza v. Berryhill*, No. 2:16-CV-2286 DB, 2018 WL 1256719, at *1 (E.D. Cal. Mar. 12, 2018)(plaintiff "cannot work at jobs that require depth perception or fine visual acuity."); *Rivera v. Colvin*, No. 2:13-CV-0163-TOR, 2014 WL 4546043, at *3 (E.D. Wash. Sept. 12, 2014) (plaintiff cannot do "work requiring constant, fine visual acuity."); *Massengill v. Colvin*, No. 6:13-CV-00791-HZ, 2014 WL 3695541, at *7 n.1 (D. Or. July 23, 2014)("[T]the ALJ properly accommodated Dr. Plotz's limitation on fine visual acuity."). The Court adopts the reasoning of these cases and concludes the ALJ erred when he found the opinions of Drs. Bernardo and Berner did not contain specific, defined visual limitations.

Accordingly, on this record the Court concludes the ALJ erred when he gave little weight to the opinions of Drs. Bernardo and Berner.

**III. The ALJ erred at Step Five when he found Plaintiff could perform other jobs that exist in the national economy.**

Plaintiff asserts the ALJ erred at Step Five when he found Plaintiff could perform other jobs that exist in the national economy.

The ALJ found at Step Five that Plaintiff could perform the jobs of addresser, cutter-and-paster, and document preparer. Plaintiff, however, points out that courts have held the jobs of

14 - OPINION AND ORDER

addresser and cutter-and-paster are obsolete.  *See, e.g., Candice E. v. Berryhill*, No. 6:18-CV-01261-YY, 2019 WL 2550318, at *4 (D. Or. June 20, 2019)(ALJ erred at Step Five when he concluded the plaintiff could perform other work that exists in the national economy because the addresser and cutter-and-paster jobs identified by the ALJ are obsolete); *Skinner v. Berryhill*, No. CV 17-3795-PLA, 2018 WL 1631275, at *5-6 (C.D. Cal. Apr. 2, 2018); *Scott v. Colvin*, No. 14-cv-04051-EDL, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015)(same); *Burney v. Berryhill*, 276 F. Supp. 3d 496, 500 (E.D.N.C. 2017); *Read v. Comm'r*, No. GJH-15-2684, 2016 WL 2610117, at *5 (D. Md. May 6, 2016).  Defendant concedes in his Response that courts have found the jobs of addresser and cutter-and-paster are obsolete and does not challenge that conclusion.  This Court, therefore, adopts the reasoning of *Candice E.* and concludes the jobs of addresser and cutter-and-paster are obsolete.  Accordingly, the Court concludes the ALJ erred when he relied on those jobs at Step Five.

Plaintiff also asserts the ALJ erred at Step Five when he found Plaintiff could perform the job of document preparer. Specifically, Plaintiff notes the *Dictionary of Occupational Titles* (DOT) defines the job of document preparer in relevant part as follows:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices:  Cuts documents into

> individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife.

DOT #249.587-018.  In light of Plaintiff's visual impairment as described by Drs. Taylor, Bernardo, and Berner, Plaintiff asserts using a paper cutter or razor knife would constitute a hazard that Dr. Taylor opined Plaintiff was not "capable of avoiding" and that conflicts with the limitation of monocular vision that is included in the ALJ's evaluation of Plaintiff's RFC.

The ALJ relied on the VE's testimony when he found Plaintiff could perform work as a document preparer.  The ALJ, however, provided a hypothetical to the VE that did not include all of Plaintiff's visual limitations as set out by Drs. Taylor, Bernardo, and Berner.  The Court has already concluded the ALJ erred when he gave only partial weight to Dr. Taylor's opinion and little weight to the opinions of Drs. Bernardo and Berner. The Court, therefore, also concludes the ALJ erred at Step Five when he failed to include all of Plaintiff's limitations in his hypothetical posed to the VE and found Plaintiff could perform work as a document preparer based on the VE's testimony.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or

16 - OPINION AND ORDER

for immediate payment of benefits generally turns on the likely
utility of further proceedings. *Id.* at 1179. The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000). The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a
single question: Whether the ALJ would have to award benefits if
the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court concludes further proceedings are necessary
because it is unclear from this record whether the ALJ would be
required to find Plaintiff is unable to perform other work that
exists in the national economy when the ALJ properly credits the
opinions of Drs. Taylor, Bernardo, and Berner. Thus, the Court
concludes a remand for further proceedings consistent with this
Opinion and Order is required to permit the ALJ to resolve that

17 - OPINION AND ORDER

question.

## **CONCLUSION**

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 28 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 16th day of July, 2020.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge